**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| JOYCE ANDREWS | CIVIL ACTION |
| VERSUS | 16-846-SDD-EWD |
| LOUISIANA STATE UNIVERSITY | |

**RULING**

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU"). Plaintiff, Joyce Andrews ("Plaintiff") was allowed to file an out-of-time *Opposition*[2] to this motion, to which LSU filed a *Reply*.[3] For the reasons which follow, the Court finds that LSU's motion should be granted.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff claims she became employed by LSU in 1980 and went to work for the LSU Graduate School in 1998.[4] Plaintiff was promoted to the position of Administrative Program Specialist A in 2005, and she held this position at the time of her sick leave and subsequent retirement in August 2015.[5] Plaintiff claims that, between 1998 and 2003, she received continuous positive employee evaluations, was promoted twice, and

---

[1] Rec. Doc. No. 11.
[2] Rec. Doc. No. 17.
[3] Rec. Doc. No. 18.
[4] Rec. Doc. No. 1, ¶ 6.
[5] Rec. Doc. No. 11-1, ¶ 6.

Document Number: 47680

received merit-based raises from her previous supervisors.[6] However, in 2003, Plaintiff came under the supervision of two new supervisors, Dr. Renee Renegar and Marie Hamilton.[7] Plaintiff alleges that, from 2003 until she took leave, no African-American employee received a raise or promotion while several white co-workers, some allegedly with less experience, training, and education, continuously received raises and promotions.[8]

In 2012, Plaintiff alleges that she was the only African-American in her department, and she was demoted and forced from her office space on at least three separate occasions until she was finally permanently placed in a "small hallway cubicle"[9] which Plaintiff claims made it difficult to do her job because of the distractions of working in a "high traffic area."[10] Subsequently, Plaintiff submitted a grievance expressing her concerns about her new work environment.[11] Between 1980 and 2010, Plaintiff claims she received only one write-up, in 2003, for an employment infraction;[12] however, after she submitted this grievance, she claims was subjected to increased scrutiny by her supervisors, and she was written up on three separate occasions between April 2013 and March 2014.[13]

In December 2013, Plaintiff alleges she took leave under the Family and Medical Leave Act ("FMLA") to recover from carpal tunnel surgery and following a diagnosis of

---

[6] Rec. Doc. No. 1, ¶ 7.
[7] *Id.* at ¶ 8.
[8] *Id.* at ¶ 9.
[9] *Id.* at ¶ 10.
[10] *Id.* at ¶ 11.
[11] *Id.* at ¶ 12.
[12] *Id.* at ¶ 13
[13] *Id.* at ¶ 14.
Document Number: 47680

Post-Traumatic Stress Disorder ("PTSD") and major depressive disorder.[14] Plaintiff claims that, immediately upon returning from FMLA leave, she was written up twice within a month.[15] Plaintiff believes that, because she was a "classified" employee who could not be fired without cause, her supervisors were building a case to terminate her.[16] Plaintiff claims her supervisors attempted to circumvent necessary steps in the disciplinary process to more quickly advance her termination.[17] Plaintiff also claims that when she again took leave and filed for disability, it was in part due to the emotional stress she was suffering from at work.[18]

On May 21, 2014, Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter on September 14, 2016.[19] On December 14, 2016, Plaintiff sued LSU asserting claims of race discrimination under Title VII of the Civil Rights Act of 1964[20] and the Louisiana Employment Discrimination Law ("LEDL")[21] and disability discrimination in violation of the Americans with Disabilities Act ("ADA").[22]

LSU contends Plaintiff took sick leave on May 2, 2014 and voluntarily retired on August 31, 2015.[23] LSU also claims that, not only was Plaintiff paid more than her two Caucasian co-employees (who held the same position as Plaintiff), she also received merit increases and satisfactory job evaluations despite ongoing instances of

---

[14] *Id.* at ¶ 15.
[15] *Id.* at ¶ 16.
[16] *Id.* at ¶ 17.
[17] *Id.* at ¶ 18.
[18] *Id.* at ¶ 19.
[19] *Id.* at ¶ 5.
[20] 42 U.S.C. § 2000e, *et seq.*
[21] La. R.S. 23:301, *et seq.*
[22] 42 U.S.C. § 12112.
[23] Rec. Doc. No. 11-1, ¶ 4.
Document Number: 47680

insubordination and significant errors in her work.[24] Specifically, LSU contends Plaintiff refused to perform duties that fell within her job description, which led to LSU requiring her to sign a "reaffirmation of responsibilities."[25] LSU maintains that this reaffirmation had no effect on Plaintiff's pay, work assignment, work conditions, or eligibility for merit increases. Further, this action did not rise to the level of appealable discipline under Louisiana's Civil Service Rules.[26]

LSU claims that Plaintiff was never denied a promotion at the LSU Graduate School, her work environment was appropriate, and her last performance review was satisfactory. Although it does not concede that Plaintiff was disabled as defined by the ADA, LSU offers evidence it nevertheless provided Plaintiff accommodations and assistance with a workspace that was more ergonomically correct as requested by Plaintiff's physician and physical therapist.[27] Further, LSU contends Plaintiff was not asked or forced to retire.

On February 23, 2018, LSU moved for summary judgment on Plaintiff's claims.[28] Under Local Rule 7(f) of the Middle District of Louisiana, Plaintiff was required to file an opposition to this motion within twenty-one days. As of May 9, 2018, Plaintiff had failed to file an opposition; therefore, the Court granted LSU's motion both procedurally and on the merits, particularly because the summary judgment evidence submitted by LSU was uncontroverted.[29] The Court did, however, defer entering judgment and advised Plaintiff's

---

[24] *Id.* at ¶ 5.
[25] *Id.* at ¶ 8.
[26] *Id.*
[27] *See* Rec. Doc. No. 11-1 at 4.
[28] Rec. Doc. No. 11.
[29] Rec. Doc. No. 12.
Document Number: 47680

counsel as follows:

> Any response to this *Ruling*, <u>which should explain the Plaintiff's failure to comply with the Court's deadlines</u>, based on the appropriate Federal Rule of Civil Procedure, shall be filed within fourteen (14) days and must be accompanied by an opposition memorandum to the original Motion.[30]

On May 23, 2018, Plaintiff moved for leave of Court to file her untimely memorandum in opposition to LSU's summary judgment motion.[31] Therein, Plaintiff's counsel apologized to the Court for the untimeliness of the opposition, and stated that he "did not consult local rules in determining the deadline for response."[32] Counsel further averred that his federal practice is primarily handling criminal matters where motion response deadlines are issued by the Court.[33] Although this is an unacceptable excuse for missing a filing deadline, in the interest of justice, the Court allowed Plaintiff's counsel to file the untimely *Opposition*.[34]

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[35] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[36] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's

---

[30] *Id.* at 2 (emphasis original).
[31] Rec. Doc. No. 13.
[32] *Id.* at ¶ 3.
[33] *Id.* at ¶ 4.
[34] Rec. Doc. No. 17.
[35] Fed. R. Civ. P. 56(a).
[36] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

case."[37]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[38]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[39]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[40]  All reasonable factual inferences are drawn in favor of the nonmoving party.[41]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[42]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[43]

---

[37] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[38] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[39] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[40] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[41] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[42] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[43] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

Document Number: 47680

## III. ANALYSIS

### A. Plaintiff's *Opposition*

The Court finds that LSU is entitled to summary judgment on all claims. Plaintiff submits a four-page *Opposition* memorandum to oppose a summary judgment motion involving claims of Title VII and LEDL race discrimination and ADA disability discrimination. Plaintiff's *Opposition* is factually and legally insufficient to address the complexity of the employment laws under which she has filed suit. Further, LSU is entitled to summary judgment as a matter of law because the Court is required to deem true the statements in its *Statement of Material Facts Not at Issue*[44] as they remain uncontroverted despite the allowance of the untimely *Opposition*. Plaintiff failed to submit a Statement of Disputed Material Facts as required under the Federal Rules of Civil Procedure and the Local Rules of this Court.[45] Local Rule 56(b) requires a litigant to include with a summary judgment opposition:

> a separate, short and concise statement of the material facts as to which the opponent contends there exists a genuine issue to be tried. **All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted** as required by this Rule.

Indeed, courts within the Middle District of Louisiana have applied this rule in instances such as this where the non-movant fails to offer a controverting statement of facts in dispute.[46] Accordingly, all of the undisputed facts offered by LSU are uncontroverted and

---

[44] Rec. Doc. No. 11-3.
[45] Notably, Plaintiff's counsel offered his failure to consult the Local Rules of this Court as an excuse for his failure to file an opposition to the current motion. Although he was allowed to file an out-of-time opposition, it is clear to the Court that counsel again failed to consult the Local Rules of this Court or the Federal Rules of Civil Procedure in opposing the summary judgment motion. This is inexcusable and fails to meet the professional expectations for attorneys admitted to the Bar of the Middle District of Louisiana.
[46] *See Hall v. Louisiana*, No. 12-657-BAJ-RLB, 2014 WL 3748244 at *1 (M.D. La. July 30, 2014)("When the non-movant fails to properly address the movant's assertion of facts, Local Rule 56.2 requires the Court to

deemed admitted for purposes of this ruling.

   **B. Substantive Claims**

   1. <u>Race Discrimination</u>

While the inquiry could end here considering the undisputed facts of this case, the Court also finds that LSU is entitled to summary judgment on the substantive merits of Plaintiff's claims. Although Plaintiff asserted a claim of race discrimination under Title VII, she fails to allege in her *Complaint* or argue in her *Opposition* that she has established a *prima facie* case of race discrimination, which is her burden. There is no mention of the *McDonnell Douglas* burden-shifting test and no argument or evidence to support Plaintiff's ostensible claim that she was treated less favorably than others similarly situated outside her protected class.

Plaintiff makes the blanket claim that "no African-American received a raise or promotion" from 2003 to 2014, yet her white co-workers "continuously received raises and promotions."[47] However, Plaintiff fails to offer any evidence to support this statement and fails to establish, as required under Title VII, that the white co-workers she claims were treated more favorably qualify as her comparators under the law. The law is clear that, "[i]n the context of a race discrimination claim where the plaintiff alleges that employees who were not members of the protected class received more [favorable treatment], the plaintiff must come forward with **specific evidence** of comparators who were similarly

---

deem such facts admitted for the purposes of the motion.); *Atkins v. Ferro Corp.*, 534 F.Supp.2d 662, n 4 (M.D. La. 2008)( Plaintiffs, in opposing defendants' motion for summary judgment, did not include a statement of material facts to which they claim that there exists a genuine issue to be tried. Under LR 56.2, all material facts set forth in defendants['] statement of uncontested facts (doc. 187) are therefore uncontroverted and deemed admitted for the purposes of defendants' motion for summary judgment.).
[47] Rec. Doc. No., P 9.

Document Number: 47680
Page 8 of 14

situated."[48] Courts within the Fifth Circuit define "similarly situated" narrowly.[49] In evaluating whether an alleged comparator is similarly situated,

> "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor [,] or had their employment status determined by the same person[.]"[50] "Employees with different supervisors, who work for different divisions of a company ... generally will not be deemed similarly situated." The Fifth Circuit has further explained, that "employees who have different work responsibilities ... are not similarly situated."[51]

Plaintiff's vague reference to "her white co-workers" fails to satisfy Plaintiff's burden. She offers no evidence of the specific co-workers she claims as comparators, and she likewise submits no evidence that such employees meet the "similarly situated" test set forth above. The wholesale failure to address or even mention these issues is fatal to Plaintiff's race discrimination claim. Accordingly, LSU is entitled to summary judgment on Plaintiff's race discrimination claims under both Title VII and the LDEL.[52]

### 2. Hostile Work Environment

Plaintiff's *Opposition* primarily focuses on challenging LSU's defense that certain Title VII claims based on events occurring prior to July 26, 2013 are time-barred under Title VII and prescribed under the LEDL. Plaintiff argues that the continuing violation

---

[48] *Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt*, 816 F.Supp.2d 297, 316 (M.D. La. 2011)(citing *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009))(emphasis added).
[49] *See Horton v. G4S Secure Solutions (USA), Inc.*, No. 16-544-SDD-EWD, 2018 WL 1997535 at *5 (M.D. La Apr. 27, 2018)(citing
*Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F.Supp.2d 581, 593 (S.D. Tex. 2012); *see also Lopez v. Kempthorne,* 684 F. Supp. 2d 827, 856-57 (S.D. Tex. 2010)).
[50] *Id.* (quoting *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012)(quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009))).
[51] *Id.* (quoting *Lee*, 574 F.3d at 259 (citing *Wyvill v. United Cos. Life Ins.*, 212 F.3d 296, 302 (5th Cir. 2000)).
[52] The scope of the LEDL is the same as Title VII and, therefore, claims under the LEDL are analyzed under the Title VII framework and jurisprudential precedent. *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474, 477 (5th Cir. 2002); *Alderman v. Great Atlantic & Pacific Tea Co., Inc.*, 332 F.Supp.2d 932, 936 (E.D. La. 2004). As such, the Court's ruling on Plaintiff's Title VII claim applies with equal force to any LEDL claims asserted.

doctrine saves her claims because the doctrine

> provides that a plaintiff alleging a hostile work environment under Title VII can recover for all injurious manifestations of that environment, regardless of when they occurred, whether they would be actionable if sued upon individually, and when the plaintiff discovered the essential facts supporting his or her claim, provided the same hostile work environment persisted up into the limitations up into the limitations period prior to the filing for an [sic] administrative charges.[53]

Nevertheless, Plaintiff's continuing violation argument is irrelevant because she has not established a *prima facie* case for a hostile work environment claim.[54]

To establish a *prima facie* case of discrimination premised upon the theory of hostile work environment, a plaintiff must show the following: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment of which plaintiff complained was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action.[55] These factors are not mentioned in Plaintiff's *Opposition*, and she has offered no evidence or argument to establish any of the elements except number one. The evidence attached to Plaintiff's *Opposition* is an *en globo* exchange of communications between Plaintiff and LSU regarding her grievance. Plaintiff offers no sworn testimony or argument to demonstrate that a material issue of fact exists on any of elements two through five. Further, considering that LSU's proffered statements of fact are admitted, it is entitled to summary judgment on any ostensible hostile work environment claim.

---

[53] Rec. Doc. No. 17 at 3 (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).
[54] Additionally problematic is the fact that Plaintiff failed to provide the EEOC charge in this matter; thus, the Court cannot determine if a hostile work environment claim was alleged and considered by the EEOC.
[55] *Claiborne v. HUB Enterprises, Inc.*, 918 F.Supp.2d 579, 587 (W.D. La. 2013)(citations omitted).

Further, although the Court evaluates this motion in the light most favorable to Plaintiff, Plaintiff offers no argument or evidence to connect any alleged harassment to her race. She has failed to demonstrate that the alleged harassment affected a term, condition, or privilege of her employment, particularly considering the uncontroverted evidence LSU submitted demonstrating that the write-ups and reaffirmation document had no effect on Plaintiff's pay, work assignment, work conditions, or eligibility for merit increases. Moreover, Plaintiff's subjective belief that LSU was attempting to build a case to terminate her for cause is unsupported by any evidence or argument.

Plaintiff also fails to present argument or evidence to establish that the alleged harassment was severe or pervasive. "A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[56] To determine whether a work environment is "hostile," a court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[57]

Further, "[f]or harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile

---

[56] *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321 (5th Cir. 2009)(quoting *Morgan*, 536 U.S. at 116)).
[57] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).

Document Number: 47680

or abusive."[58]  Plaintiff offered no jurisprudence to support any claim that the conduct alleged herein qualifies as objectively offensive.

Although it is difficult to analogize jurisprudence to the case before the Court given Plaintiff's lack of evidence, argument, or offering of analogous jurisprudence, the Court discovered a case that appears to be somewhat similar, for the sake of discussion, to the facts of Plaintiff's case.  In *Montgomery v. Sears Roebuck & Co*, an African-American employee sued her former employer alleging race discrimination, retaliation, and hostile work environment under Title VII.[59]  The plaintiff had been employed by Sears Department Store as a Receiving Associate and had been promoted to a Receiving Lead.[60]  The plaintiff alleged that her supervisor constantly harassed her about her work performance, had a "personal vendetta" against her, and wanted to fire her as demonstrated by "nit-pick[ing], trying to make her department "look bad," and failing to hire enough assistants for her during the Christmas season.[61]  The plaintiff further complained that her supervisor lied about her job performance in policy violation write-ups and attempted to terminate her for job abandonment when she failed to contact him, although she had contacted Human Resources, when she had to take emergency leave.[62]

The plaintiff tried to connect her supervisor's alleged conduct to her race by alleging that she overhead her supervisor tell another employee that he needed to watch the Receiving Associates, who were African-Americans, because they were "lazy" and

---

[58] *Rowe v. Jewell*, 88 F.Supp.3d 647, 675 (E.D. La. 2015)(quoting *Equal Emp't Opportunity Comm'n v. WC & M Enters., Inc.*, 496 F.3d 393, 399–400 (5th Cir. 2007)).
[59] 720 F.Supp.2d 738 (W.D. La. 2010).
[60] *Id.* at 741.
[61] *Id.* at 746.
[62] *Id.*

had to be made to work.  The plaintiff also claimed the supervisor once made a black employee clean up after a child who had vomited in the store.  Finally, the plaintiff alleged that the supervisor disciplined her for adding hours to her schedule but did not discipline a white employee for the same conduct.[63]  The court held that, even accepting the plaintiff's allegations as true, she failed to establish racial animus:

> She has presented no evidence other than her own subjective belief that the actions allegedly taken against her were based on race, Montgomery has not alleged that Gewin or Blann ever used racial epithets or slurs toward her or anyone else, and nothing in the content of Gewin's statements or the written disciplinary actions suggests they were based on race. … Even if Gewin was motivated by racial animus when he allegedly watched the Receiving Department more closely on the Loss Prevention video feed and had a black employee clean up after his child, this conduct would not be severe or pervasive enough to constitute a hostile work environment.[64]

Further, with respect to the plaintiff's argument that she was disciplined for adding hours to her schedule while a white co-worker was not, the court noted that this white co-worker was not similarly situated to the plaintiff; thus, this conduct did not imply a racial animus on the part of the supervisor.[65]

For the same reasoning and analysis set forth in *Montgomery*, Plaintiff herein has failed to carry her burden of establishing a *prima facie* case for hostile work environment.  At best, her allegations, taken as true, have no connection whatsoever to race.  As set forth above, she has failed to identify a similarly situated comparator and failed to present evidence or argument that her working conditions were objectively severe or pervasive.  LSU is entitled to summary judgment on Plaintiff's hostile work environment claim under Title VII and the LEDL.

---

[63] *Id.*
[64] *Id.* at 746-47.
[65] *Id.* at 747.
Document Number: 47680

3. ADA Claim

Plaintiff asserted a claim under the ADA in her *Complaint*; however, she utterly failed to address this claim in her *Opposition*. The law is clear that "[f]ailure to address a claim in response to a defendant's summary judgment motion constitutes abandonment of the claim."[66] Again, as LSU's proffered facts are deemed admitted by this Court, and Plaintiff has abandoned this claim, LSU is entitled to summary judgment on the ADA claim as a matter of fact and law.

IV. **CONCLUSION**

For the reasons set forth above, the *Motion for Summary Judgment*[67] filed by LSU is GRANTED. Plaintiff's case is dismissed with prejudice. The Pretrial Conference set for October 9, 2018, and the Jury Trial set to begin on October 22, 2018 are hereby CANCELED.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 6th day of September, 2018.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[66] *Valenza v. Wal-Mart Stores, Inc.*, No. 16-2469, 2016 WL 7407178 at * 4 (E.D. La. Dec. 22, 2016)(quoting *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001)).
[67] Rec. Doc. No. 11.

Document Number: 47680